UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
VETO L. COLE,

                Plaintiff,                     MEMORANDUM & ORDER
                                                           09-CV-3185(RRM)(CLP)
    - against -

CENTRAL PARK SYSTEMS, INC., SHEIK
RAHIM, PAUL ISAAC and TEAMSTER
UNION,

                Defendants.
----------------------------------------------------------X
MAUSKOPF, United States District Judge.

      Plaintiff Veto L. Cole commenced this action against, among others, the International Brotherhood of Teamsters Local 917 ("Local 917") (s/h/a "Teamster Union") and Paul Isaac, Local 917's Vice President and business agent (collectively referred to herein as the "Local 917 Defendants"). Cole alleges employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et seq.*, the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C.A. §§ 621 *et seq.*, and various statutory and common law causes of action arising under New York State and New York City law.

      Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Local 917 Defendants now move to dismiss the Complaint.[1] Cole opposes the motion and seeks leave to interpose an Amended Complaint, pursuant to Federal Rule of Civil Procedure 15, to specify additional tort and contract causes of action against these Defendants. (*See* docket entry 22.) For the reasons below, the Local 917 Defendants' motion to dismiss is GRANTED; those claims asserted against Local 917 and Isaac are dismissed in their entirety; and Plaintiff's motion to amend is DENIED.

---

[1]     Defendants Central Parking System, Inc. (s/h/a "Central Park Systems, Inc.") and Sheik Rahim do not join in the instant motion.

## FACTUAL BACKGROUND[2]

Cole, 61, was born in Jamaica, West Indies and resides in Kings County, New York. From September 1995 through September 1997, Central Parking System, Inc. ("CPS") employed Cole as a cashier in its parking garage at Kings Plaza, Brooklyn, New York (the "Garage"). During the course of his employment with CPS, Cole was represented by Local 917, a "labor organization" within the meaning of § 301 of the Labor Management Relations Act of 1947 (the "LMRA"), 29 U.S.C. §§ 185 *et seq.*, and which, during the relevant time period, represented all CPS employees pursuant to a collective bargaining agreement (the "CBA"). Paul Isaac, Local 917's vice president/business agent, served as Cole's union representative and was responsible for handling employment disputes and grievances.

### A. Alleged Employer Discrimination

Cole alleges that he was subjected to ongoing discriminatory treatment by, among others, CPS, Isaac, and Local 917, because of his age and national origin. According to Cole, defendants' discriminatory acts included: singling him out for discipline while ignoring similar or identical conduct by younger, non-West Indian employees, responding in a hostile manner to his requests for overtime compensation, and wrongfully terminating his employment on the basis of impermissible age and national origin bias. These incidents are further detailed below.

1) <u>The April 2007 Suspension</u>

On or about April 1, 2007, Cole received an Employee Warning Notice and was suspended from his employment for failure to abide by CPS security protocols. From the allegations set forth in the Complaint, it appears that CPS required its garage cashiers to keep no more than $200 in their cash drawers, a requirement Cole refers to as the "cash-drop" rule. Cole

---

[2] The facts stated herein are drawn from the Complaint dated July 23, 2009 (docket entry 1) and the proposed Amended Complaint dated December 31, 2009 (docket entry 22).

maintains that on April 1, 2007, his supervisor permitted him to exceed the $200 cash-drop rule, and keep $300 in reserve on account of increased garage traffic at that time.[3] On that day, Cole was robbed of all $300 at gunpoint. Notwithstanding Cole's claim that he had been authorized to exceed the cash drop-rule, Cole received and was required to sign an Employee Warning Notice acknowledging violation of the cash-drop requirement. Cole refused to sign and was consequently suspended.

Expecting to be contacted by Local 917, Cole waited five days before contacting Local 917 and speaking with Isaac. According to Cole, Isaac informed him that his suspension should have been no longer than two days and that he should therefore return to work. Cole did return to work, but claims that he received no wages for any part of the five-day suspension. Cole further claims that he contacted Isaac about the missed compensation but was purportedly advised not to pursue the matter for fear of retaliation by CPS, including possible termination of Cole's employment.

2) <u>Overtime Claims</u>

Cole alleges that CPS failed to pay him overtime pay for periods worked during the summer of 2007. After bringing this to the attention of CPS Human Resources without result, Cole again contacted Local 917, and was informed by Isaac that overtime should have been paid. Although the Complaint is not clear on this point, it appears that in or about the summer of 2007, Cole, Isaac, a member of CPS Human Resources, and Cole's supervisor, among others, met to discuss Cole's overtime complaints. Cole alleges that Human Resources, after verifying Cole's overtime claims, agreed that Cole was entitled to overtime wages. It appears, however, that Cole

---

[3] The Complaint is unclear on the specific details surrounding this incident.

challenges the sufficiency of Local 917 and Isaac's support in connection with Cole's overtime grievance.

3) <u>September 2007 Suspension/Termination</u>

On September 17, 2007, Cole was again subject to a five-day disciplinary suspension after an incident involving operation of the electric gate at his Garage. As alleged, the gate circuit-breaker apparently "turned off" twenty-nine times during Cole's work-shift. As a result, there was no electronic record of vehicle exits from the Garage for those time-periods. CPS charged Cole with deliberately disabling the gate circuit-breaker, the result being an alleged loss of revenue. Denying that charge, Cole claims that CPS had information that the gate circuit-breaker, as well as other Garage circuit breakers, frequently malfunctioned. Furthermore, Cole claims that, because his back faced the electric gate, he had no notice of the malfunction. At the conclusion of his five-day suspension period on September 22, 2007, Cole was again required to sign an Employee Warning Notice as a condition of his reinstatement. Cole again refused to sign the Notice and remained on suspension indefinitely.

Shortly thereafter,[4] Cole, still on suspension, contacted Isaac. Cole claims that Isaac assured him that he would discuss the matter with Cole's supervisor. On or about September 25, 2007, Cole attempted to contact Isaac but was unable to reach him. After eventually reaching Isaac at some unspecified time thereafter, Cole was allegedly told to report for an October 17, 2007 meeting to discuss Cole's reinstatement. During that meeting, which included Cole, Isaac, two members of CPS Human Resources, and several members of CPS management, Cole was asked for his account of the events of September 17, 2007. The issue of Cole's reinstatement

---

[4] No specific date is indicated in the Complaint.

having apparently been unresolved at the conclusion of that meeting, Isaac informed Cole that he would contact him.

Five days later, on October 22, 2007, Cole received a letter from Isaac, stating that Cole's version of the September 17, 2007 events could not be substantiated and that CPS was therefore terminating his employment. Cole claims that he attempted to contact Isaac after receiving the letter but that Isaac was unavailable and never returned his calls. Cole alleges that his employment was discriminatorily terminated because of his age, 61, and his national origin, West Indian. Cole also alleges that he was terminated in retaliation for complaining about not being paid overtime.

### B. Alleged Union Misconduct

In his proposed Amended Complaint, which Cole submits in opposition to the instant Motion to Dismiss, and which provides additional factual detail pertaining to his allegations against the union, Cole indicates that on October 12, 2007, he filed an unfair labor practice charge against Local 917 with the National Labor Relations Board ("NLRB"). In that NLRB complaint he alleged Local 917 breach its duty of fair representation and had violated LMRA § 8(b)(1)(A) by arbitrarily refusing to process certain grievances on his behalf. In addition to the allegations made to the NLRB, Cole's proposed Amended Complaint elaborates further on his union complaint, complaining that Local 917 did not adequately prepare for the October 17, 2007 meeting. Specifically, he claims that Local 917 neglected to interview him or any other witnesses and that they did not request any information or evidence from CPS (for example, a videotape of the booth where Cole worked). That failure, Cole alleges, effectively permitted termination of his CPS employment. Cole's Amended Complaint further suggests that the

failure of Local 917 and Isaac to adequately represent him post-termination was retaliation for Cole's 2007 NLRB charge.

### C. Administrative Complaints

The NLRB dismissed Cole's fair-representation charges by written decision dated November 16, 2007. On June 27, 2008, Cole filed a complaint with the New York State Division of Human Rights ("NYSDHR"), pursuant to § 296 of the Executive Law of the State of New York, the New York Human Rights Law (the "NYHRL"), charging CPS with discrimination and retaliation. It is not disputed, however, that Cole's NYSDHR complaint did not name Local 917 or Isaac, nor did it in any way allege misconduct by either of these defendants. The NYSDHR returned with a determination on January 7, 2009, finding that there was no probable cause to believe that CPS had engaged in discriminatory employment practices. Thereafter, on April 27, 2009, the NYSDHR's determination was expressly adopted by the Equal Employment Opportunity Commission ("EEOC"). Subsequently, the EEOC dismissed Cole's discrimination complaint and issued a Notice of Rights on Cole's behalf. Cole commenced this action on July 23, 2009.

## MOTION TO DISMISS STANDARD

The Local 917 Defendants move to dismiss Cole's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the facts stated in the complaint, the documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir. 1991). The Court may also "take judicial notice of the records of state administrative procedures, as these are public records." *Evans v. The New York Botanical Garden,* No. 02 Civ. 3591, 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002).

In this case, the NYSDHR filings, the EEOC Notice, and the NLRB charge, all being records of administrative proceedings, may properly be relied upon in connection with this Court's review of the instant motion. *See Evans,* No. 02 Civ. 3591, 2002 WL 31002814, at *4 (NYSDHR filings may be relied upon on a motion to dismiss); *Muhammad v. New York City Transit Auth.,* 450 F.Supp.2d 198, 204-05 (S.D.N.Y.2006) (taking judicial notice of an EEOC charge on a motion to dismiss); *Kavowras v. N.Y. Times Co.,* 328 F.3d 50, 57 (2d Cir. 2003) (NLRB decisions may also be relied upon on a motion to dismiss).

On a motion to dismiss the court shall accept as true all well-pleaded allegations contained in the complaint and draw all reasonable inferences in favor of the non-moving party. *Thomas v. City of New York,* 143 F.3d 31, 37 (2d Cir. 1998). In deciding a Rule 12(b)(6) motion, a complaint should be dismissed only if it does not contain sufficient allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. The requirement that the court accept all factual allegations as true does not apply to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* The court's determination of whether a complaint states a "plausible claim for relief" is a "context-specific inquiry" that requires application of "judicial experience and common sense." *Id.*

# DISCUSSION

## A. Cole's Discrimination Claims Against the Local 917 Defendants

### 1) Title VII and the ADEA

#### a. Notice Requirement

Title VII makes it "an unlawful employment practice for an employer ... to fail or refuse to hire or discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADEA "prohibit[s] arbitrary age discrimination in employment." 29 U.S.C. § 621(b). However, liability under either federal statute may not be had against individuals. *See Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (dismissing Title VII claims "because individuals are not subject to liability under Title VII"); *Cherry v. Toussaint*, 50 F. App'x 476, 477 (2d Cir. 2002) (affirming the dismissal of ADEA claims against individuals because "the ADEA precludes individual liability"). *See also Ziegler v. Adams*, 316 F. App'x 52, 52 (2d Cir. 2009) (affirming the dismissal of Title VII claims brought against individuals who supervised the plaintiff because "individuals with supervisory control over a plaintiff are not subject to personal liability under Title VII"); *Falbaum v. Pomerantz*, 19 Fed. App'x 10, 14 (2d Cir. 2001) (reasoning that "individual defendants may not be held personally liable under the ADEA"). Thus the dismissal of Paul Isaac is required.

To initiate a lawsuit under either Title VII or the ADEA, a plaintiff must first file a timely charge with the EEOC or with an appropriate state or local agency. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 82-83 (2d Cir. 2001) (noting that before bringing a Title VII or ADEA action in court, the plaintiff must first file a charge with the EEOC or a qualified state or local agency); *Adams v. Debevoise & Plimpton*, No. CV-03-3015, 2004 WL 1737826, at *2-7

(S.D.N.Y. Aug. 3, 2004) (considering the merits of the plaintiff's Title VII claim after the plaintiff had filed an administrative complaint); *Frankel v. City of New York*, No. CV-06-540, CV-07-3436, 2009 WL 465645, at *2-4, *8 (S.D.N.Y. Feb. 25, 2009) (evaluating the merits of the plaintiff's Title VII and ADEA claims after the plaintiff had filed an administrative complaint with the New York City Commission on Human Rights). A timely charge is one filed within 300 days of the alleged discriminatory conduct. *See* 42 U.S.C. § 2000e-5(e) ("in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred"); 29 U.S.C. § 626(2)(d)(1)(B) (requiring plaintiffs to file charges alleging illegal discrimination within 300 days of the alleged conduct); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002) ("[A] Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period—180 or 300 days—set forth in 42 U.S.C. § 2000e-5(e)(1)"). Failure to file a charge within 300 days of the alleged conduct acts as a statutory bar to preclude relief for earlier events. *See Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996) ("only events that occurred during the 300-day period prior to filing…are actionable under Title VII"); *Saidin v. New York City Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007) (dismissing as time-barred all Title VII and ADEA claims that occurred more than 300 days before the plaintiff filed the relevant charge with the EEOC). Thus, any incidents that allegedly occurred more than 300 days prior to a plaintiff filing his charge are time-barred.

Title VII and the ADEA claims are cognizable against union defendants, but only where plaintiff can first establish a breach of the duty of fair representation. *See Oparaji v. United Fed'n of Teachers*, 418 F. Supp. 2d 139, 146 (E.D.N.Y. 2006) (analyzing Title VII claims against union); *Burke v. CWA Local 1109, AFL-CIO*, No. 07 Civ. 3595, 2009 WL 3805517, at *3 (E.D.N.Y. Nov. 12, 2009); *Smith v. New Venture Gear, Inc.*, No. 5:00-CV-1151, 2008 WL 200015, at *25 (N.D.N.Y. Jan. 22, 2008); *Nweke v. Prudential Ins. Co. of Am.*, 25 F. Supp. 2d 203, 220 (S.D.N.Y. 1998). Establishing that claim requires a showing that the union has failed to discharge its duties in good faith, with honesty and without hostility or discrimination. *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). As a threshold matter, however, incurable procedural defects in Cole's underlying administrative complaints preclude any merits determination of those claims.

As the Local 917 Defendants correctly point out, not only does Cole's requisite EEOC complaint fail to articulate Defendants' breach of the duty of fair representation, it fails utterly to name as defendants either Local 917 or Isaac, thus robbing them of the procedural right to notice. Title 42 U.S.C. § 2000e-5(b) makes clear that "[w]henever a charge is filed by or on behalf of a person claiming to be aggrieved… alleging that an employer, employment agency, labor organization, or joint labor-management committee… has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge… on such employer, employment agency, labor organization." *Id.* The purpose of implementing a rule that parties not named in the EEOC charge may not be named in subsequent Title VII suits, is to notify the charged party of alleged their violation and to bring them before the EEOC, thereby permitting effectuation of Title VII's primary goal: the securing of voluntary compliance with law. *Brown v. City of New York*, 869 F. Supp. 158, 169 (S.D.N.Y. 1994).

This defect, which has been deemed jurisdictional, precludes further review by this Court. *See Bridges v. Eastman Kodak Co.*, 822 F. Supp. 1020, 1023 (S.D.N.Y. 1993) ("A district court generally has subject matter jurisdiction only over actions against those individuals named as respondents in an EEOC charge.") (citing *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991)). Accordingly, Cole's Title VII and ADEA claims must be dismissed for failure to comply with the "exhaustion of remedies" requirement inherent in these actions. *See Wei Hong Zheng v. Wong*, No. 07-CV-4768, 2009 WL 2601313, at *3-4 (E.D.N.Y. Aug. 24, 2009) (dismissing claims against parties not named in NYSDHR charge for failure to exhaust administrative remedies against those defendants).

### b. The "Identity-of-Interest" Exception

Now seeking to avoid dismissal of his claims against these unnamed defendants, Cole argues that the Court should apply the "identity of interest" exception, which permits a plaintiff to proceed even against defendants not named in an underlying administrative charge in cases where the named and unnamed parties share a "clear identity of interest." *Johnson*, 931 F.2d at 209. The "identity of interest" exception, however, is inapplicable here.

The exception is intended to protect parties "not versed in the vagaries of Title VII and its jurisdictional and pleading requirements." *Tarr v. Credit Suisse Asset Mgmt.*, 958 F. Supp. 785, 794 (E.D.N.Y. 1997). Consequently, the exception has been applied most commonly in the context of *pro se* administrative complaints. *Id.* Here, by contrast, Cole's administrative charges were filed with the assistance of legal counsel, Violet L. Samuels, Esq. This Court, agreeing with the majority of district courts examining the issue, thus concludes that Cole's reliance on the "identity of interest" exception is inapt, and that dismissal is warranted on that ground alone. *See Brown v. County of Oneida*, No. 99-CV-1064, 2000 WL 1499343, at *2 (N.D.N.Y. Sept. 28,

2000) (collecting cases); *but see Olvera-Morales v. Sterling Onions, Inc.,* 322 F. Supp. 2d 211 (N.D.N.Y. 2004) (declining to limit identity of interest exception to *pro se* cases).

Even if the identity of interest exception were available, the elements of that exception are not satisfied in this case. To determine whether an identity of interest exists, courts consider four factors: 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party. *Johnson,* 931 F.2d at 209. Applying this test, courts in the Second Circuit have held consistently that unions and employers generally do not share the clear identity of interest necessary to waive Title VII and ADEA notice requirements. *See Vital v. Interfaith Med. Ctr.,* 168 F.3d 615 (2d Cir. 1999) (dismissing Title VII claims against union defendant absent prior notice, finding no identity of interest between union defendant and plaintiff's employer under *Johnson* analysis); *see also Wells v. Mt. Vernon Hosp.,* No. 01 Civ. 9129, 2002 WL 1561099, at *3 (S.D.N.Y. July 15, 2002) (dismissing union discrimination claims on grounds of insufficient notice and finding identity-of-interest exception not satisfied); *Schaefer v. Erie County Dep't of Soc. Servs.,* 82 F. Supp. 2d 114, 116-117 (W.D.N.Y. 2000) (same); *Hussein v. Waldorf Astoria Hotel, Rest. and Club Employees and Bartenders Local # 6,* No. 99 Civ. 1652, 2000 WL 16928, at *5 (S.D.N.Y. Jan 11, 2000) (same); *Johnson v. Dist. Council of Carpenters,* No. 91 Civ. 7961, 1995 WL 567426, at *2-3 (S.D.N.Y. Sept. 25, 1995)

(same). Application of the rationale articulated by the Second Circuit in *Interfaith Medical Center v. Vital* and its progeny equally mandates dismissal in this case.

Taking Cole's allegations as true and drawing all reasonable inferences therefrom, this Court finds that Cole has failed to establish the identity of interest between his employer and the Local 917 Defendants necessary to exempt him from the requirement that he first exhaust his administrative remedies against these defendants. First, Cole knew his union's role to be separate and distinct from CPS, particularly in light of the fact that Local 917 and Isaac represented him in his various employee grievances. *See Vital*, 168 F.3d at 620. Thus, insofar as the relationship between employer and union, Cole understood the parties to be distinct from one another and that they often occupied adversarial roles. *See Wells*, 2002 WL 1561099, at *3. Indeed, Cole's reliance upon that distinction, and the knowledge that Local 917 bore an obligation to represent him in the utmost good faith in all reasonable grievances against his employer, is manifest in his subsequent administrative complaint to the NLRB.[6] Second, CPS's interests are completely dissimilar from that of either Local 917 or Isaac, such that resolution of his discrimination claims against one, would not resolve his claims against the other. *Id.* In other words, the EEOC would not have been able to achieve a voluntary resolution of Plaintiff's discrimination complaint against the union without including the union at the table. *See Vital*, 168 F.3d at 620 (finding employer defendants and union defendants "sufficiently dissimilar that [the union's] participation would be necessary to voluntary conciliation"). Lastly,[7] nothing in

---

[6] It bears further repeating, that the distinct obligation owed by labor organizations to fairly represent their members – an obligation which Cole not only understood, but affirmatively sought to vindicate in filing his administrative action with the NLRB – forms the basis for the legal requirement that discrimination claims against unions be predicated upon a demonstrable breach of that duty. *Vaca*, 386 U.S at 177. That further showing, which is uniquely required to assert any viable claim of union discrimination under federal law belies any identity of interest and only serves to underscore the important distinctions between unions and employers.

[7] The Court cannot determine, based on this record, whether the Union suffered actual prejudice due to its absence from the EEOC proceedings. However, the strength of the remaining three factors leads the Court easily to conclude that there is no identity of interest between the Union and the Hospital. *See Vital*, 168 F.3d at 620 n. 3.

the record suggests that the Local 917 Defendants conveyed to Cole any impression that his union relationship should be conducted through CPS. *Cf. Vital*, 168 F.3d at 620; *Wells*, 2002 WL 1561099, at *3. For these reasons, Cole has not demonstrated an identity of interest sufficient to excuse his failure to name either of the Local 917 Defendants in his administrative discrimination charge; nor has Cole alleged any other facts from which adequate notice to the Local 917 Defendants may be inferred. *See id.* (finding that a union was not put on notice when the plaintiff filed an EEOC charge against the union member's employer). Accordingly, as all four factors weigh in favor of the Local 917 Defendants, Cole's federal discrimination claims against them are dismissed.

Finally, this Court notes that permitting Cole to file a new administrative charge against the 917 Local Defendants would be futile. In pursuing his federal claims, Cole is bound by the statute of limitations applicable to Title VII and ADEA actions, which requires that such conduct be identified in an EEOC complaint within 300 days of its occurrence. Here, any new administrative complaint properly naming the Local 917 Defendants, and complaining of their conduct in connection with Cole's October 2007 termination would be time barred, as far exceeding the 300-day limitations period. As this Court can find no ground for tolling that period, Cole's Title VII and ADEA claims are dismissed with prejudice.

### 2) NYSHRL & NYCHRL Claims

Discrimination claims against unions and individual union representatives brought pursuant to New York State and City statutes do not lie. These claims are subsumed within the duty of fair representation imposed by the National Labor Relations Act, 29 U.S.C. § 8(b) as amended 29 U.S.C.A. § 158(b) (*see, Vaca*, 386 U.S. at 177), and are thus preempted. *See Snay v. U.S. Postal Serv.*, 31 F. Supp. 2d 92, 99 (N.D.N.Y. 1998). It has been held that where, as here, a state law claim gives no new rights to the employee and imposes no new duty on the

union, it is preempted. *Rodolico v. Unisys Corp.*, 96 F. Supp. 2d 184, 187-88 (E.D.N.Y. 2000). Thus, where a union or its representatives are charged with discriminating against certain members on the basis of impermissible animus, that claim is construed as a claim for breach of the duty of fair representation; which duty requires unions to act on their members' behalf "without hostility or discrimination [in] complete good faith and honesty to avoid arbitrary conduct." *Vaca*, 386 U.S. at 177. Accordingly, Cole's NYSHRL and NYCHRL claims alleging that Local 917 and Isaac discriminated against him in failing to vigorously pursue his grievances must be dismissed. *Cf. Fenn v. Verizon Commc'ns, Inc.*, 2010 WL 908918, at *5; *Cabrera v. NYC*, 436 F. Supp. 2d 635, 646 (E.D.N.Y. 2006) (dismissing as preempted state law discrimination claims brought against both union and individual union representatives as stating breach of the duty of fair representation); *Zuckerman v. Volume Serv. Am., Inc.*, 304 F. Supp. 2d 365, 372-73 (E.D.N.Y. 2004); *Marrerro v. City of New York*, No. 02 Civ. 6634, 2003 WL 1621921, at *3 (S.D.N.Y. Mar. 28, 2003) (New York State Human Rights Law claim that union discriminated plaintiff on account of race preempted as alleging breach of duty of fair representation).

### B. Cole's Remaining Claims Against the Local 917 Defendants

By way of a proposed Amended Complaint (see, docket no. 22), Cole seeks to rectify his initial pleading failures, and now asserts a previously absent claim for breach of the duty of fair representation. That breach, Cole alleges, deprived him of his employee rights under the relevant CBA and is the basis for his union-based claims for loss of statutory overtime wages, breach of contract, tortuous interference with contract, and wrongful termination.

Traditionally, courts have held these types of state statutory and common law employee-rights claims to be preempted by labor law and actionable pursuant only to the following intertwined federal provisions: § 301(a) of the LMRA, *supra*, which requires that employers

comply with the terms of any applicable CBA, and § 9(a) of the NLRA, *supra*, which imposes upon unions their duty of fair representation. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985); *accord Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988); *Dougherty v. Amer. Tel. & Tel. Co.*, 902 F.2d 201, 203 (2d Cir. 1990). Consequently, Cole's attempt to vindicate his various employee rights is cognizable exclusively by virtue of what has come to be known as a hybrid § 301/duty of fair representation claim. *Dragone v. M.J. Raynes, Inc.*, 695 F. Supp. 720, 724 (S.D.N.Y. 1988) (contractual interference and wrongful termination claims against unions are in actuality § 301 claims); *Smith v. Evening News Assn.*, 371 U.S. 195 (1962) (§ 301 suits encompass those seeking to vindicate "uniquely personal" rights of employees such as wages, hours, overtime pay, and wrongful discharge); *Depperman v. Local 1199 Union*, 1994 WL 225434 at 5, No. 91 Civ. 6696 (JFK), (S.D.N.Y. May 25, 1994) (§ 301 suits encompass overtime pay claims).[8] In this case, however, any hybrid claim would be untimely, and subject to summary dismissal.

Hybrid claims are governed by the six-month statute of limitations identified in § 10(b) of the NLRA (*see DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 173 (1993)), which "accrues" when union members know or should reasonably know that their union has breached its duty. *Santos v. Dist. Council*, 619 F.2d 963, 969 (2d Cir. 1980). In this case, any hybrid

---

[8] In *Allis-Chalmers Corp v. Lueck*, the Supreme Court broadly defined the scope of cases preempted by § 301, finding that:

> The interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract...

471 U.S. at 211.

claim could not have accrued later than October 12, 2007, the date Cole filed his formal administrative complaint with the NLRB, alleging Local 917's breach. Notwithstanding the 2007 filing of his administrative fair-representation claim, Cole failed to file the instant district court action until July 23, 2009, more than two years too late. Cole argues that the applicable limitations period should be equitably tolled, but fails to provide any basis for such relief. Cole's citation to *DelCostello*, is unavailing, as the Court there declined to consider tolling. *Id.* at 152. Even were this Court to entertain Cole's unsupportable contention that the limitations period should run only from his receipt of the NLRB's determination, i.e., November 16, 2007, the claim would remain untimely. *Cf. Ode v. Terence Cardinal Cooke*, No. 08-Civ-1528, 2008 WL 5262421, at *2 (S.D.N.Y. Dec. 12 2008) (in a § 301 hybrid action, an employee's action against a union accrues, for purposes of the six-month statute of limitations of the National Labor Relations Act, on the date the former employee filed his NLRB charge).

For the reasons discussed above, Cole's motion to interpose an Amended Complaint is denied as futile. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 76 (2d Cir. 1998), (where the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied); *Horvath v. Daniel*, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006) ("In this Circuit, an amendment is considered futile if the amended pleading fails to state a claim, or would be subject to a motion to dismiss on some other basis.") (quoting *Tri-State Judicial Servs., Inc. v. Markowitz*, 624 F. Supp. 925, 926 (E.D.N.Y. 1985) (internal quotation marks omitted)).

## CONCLUSION

For the reasons set forth above, the Local 917 Defendants' motion to dismiss is GRANTED in full and claims asserted against Defendants Teamster Union and Paul Isaac are

DISMISSED. Furthermore, Cole's motion to amend the Complaint is DENIED. This matter is recommitted to the assigned Magistrate Judge for supervision of all remaining pre-trial issues and further settlement discussions.

                                                    SO ORDERED.

Dated: Brooklyn, New York
       September 20, 2010

                                                    ROSLYNN R. MAUSKOPF
                                                    United States District Judge